Nickerson, Gary A., J.
MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF’S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT’S CROSS MOTION FOR SUMMARY JUDGMENT ON COUNTS I, II, AND V OF PLAINTIFF’S COMPLAINT
This action arises out of a dispute over the status of certain property in Dennisport, Massachusetts. Plaintiff KASL-Seabreeze, LLC has moved for Summary Judgment on Count I of its Amended Complaint, seeking a declaration that the land, buildings, and units at 54, 58, 60, 64, and 66 Center Street (“the Premises”) are part of the Seabreeze Condominium. Defendants, the Trustees of the Seabreeze Condominium Trust, have cross moved for summary judgment on Count I, as well as Counts IV (seeking to quiet title) and V (intentional misrepresentation) of Plaintiffs complaint.
For the reasons discussed in Section I below, Plaintiffs Motion for Summary Judgment is DENIED. Defendant’s Cross Motion for Summary Judgment as to Counts I, IV, and V is ALLOWED for the reasons set forth in Section II.
FACTUAL BACKGROUND
The following facts are taken from the parties’ Combined Statement of Material Facts and their Combined Exhibits. Seabreeze Condominiums was created pursuant to a Master Deed for 78 and 88 Center Street, Dennisport that was recorded with the Barnstable Couniy Registry of Deeds on February 5, 2005. J. Stmt. 2. In that deed, Hawkeye Management, Inc. (the “Declarant”) reserved the right to add the “additional land, buildings and units” at 54, 56, 58, 60, 64, 66,[2] and 70 Center Street to the Condominium. See Exh. 3. A recorded “Declaration of Trust” dated February 4, 2005 established the Seabreeze Condominium Trust (“the Trust”). J. Stmt. 2. Bernhard Keller, Robert Fabiano, Letish Morin, Emily Home, and Daniel Neske serve as Trustees. Id. The Declarant executed a promissory note in favor of Sovereign Bank on July 7,2006, *600 secured by a mortgage on the land and buildings at 54, 58, 60, 64, and 66 Center Street (“the Premises.”) Exh. 5.
On August 10, 2006, the First Amendment to the Master Deed was recorded at the Barnstable County Registry of Deeds. J. Stmt. 6. The parties dispute the impact of the First Amendment. Plaintiff claims that the Premises “were taken out of the common area facilities of the Condominium and phased into the Condominium development as units and became a part thereof’ by virtue of the First Amendment. J. Stmt. 7. Defendant alleges that the Premises were not submitted to the Condominium but rather, remained “additional land” that, pursuant to the Master Deed, could be added to the Condominium in a single phase. Response to J. Stmt. 7.
Sovereign Bank, the sole lienholder on the Premises, foreclosed on its mortgage on December 19,2008. J. Stmt. 8. Subhash Agrawal, in his capacity as manager of KASL, LLC acquired the Premises at auction on that date. J. Stmt. 10. Plaintiff KASL-Seabreeze’s subsequent communications with the Trustees of Seabreeze Condominiums included email correspondence and receiving a Seabreeze Condominium Trust Certificate (the “§6d Certificate”)[3] on approximately January 29, 2009. J. Stmt. 12. This certificate requested $62,846 in common area expenses from Plaintiff. Id. Sovereign Bank executed a Foreclosure Deed in favor of Plaintiff on January 29, 2009. J. Stmt. 13. The closing occurred on February 5, 2009. J. Stmt. 19.
On May 12,2009, the Trustees recorded the Second Amendment to the Master Deed, which purported to remove the Premises from the Condominium. J. Stmt. 21. It also purported to remove the land, buildings, parking areas, swimming pool, and blower vents and pumps located at 70 Center Street (the “Newfang property”) from the Condominium and convey it to Newfang, LLC. J. Stmt. 22. A quitclaim deed from the Trustees to Newfang, LLC was recorded on May 13, 2009. J. Stmt. 25. Plaintiff did not participate in or consent to the Second Amendment to the Master Deed. J. Stmt. 23.
DISCUSSION
I. Plaintiffs Motion for Summary Judgment
Summary judgment will be granted where no genuine issues exist as to any material fact and where the moving party is entitled to judgment as a matter of law. Community National Bank v. Dawes, 369 Mass. 550, 554 (1976). A party moving for summary judgment that does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s claim or by demonstrating that proof of that element is “unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp.,410 Mass. 805, 809 (1991). In determining whether the record presents a genuine issue of material fact for trial, all facts are viewed in the light most favorable to the party opposing summary judgment, and the non-moving party is entitled to the benefit of any favorable inferences. Patsos v. First Albany Corp., 48 Mass.App.Ct. 266, 267 (1999).
Plaintiff seeks a declaratory judgment that the land and buildings at 54, 58, 60, 64, and 66 Center Street (the Premises) are part of the Seabreeze Condominium. The crux of its argument is that all recorded documents, as well as certain actions of the Trustees, “indicate that the Premises are part of the Condominium." Pltff. Mtn. for Summ. Judg. at 2. If the Premises were not included in the Condominium, Plaintiff contends, it would have been unnecessary for the Trustees to record the Second Amendment, which attempted to remove the Premises from the Condominium. See Exh. 15. However, contrary to Plaintiffs position, the plain language of the documents indicates that the Premises are not part of the Condominium.
A. The Master Deed did not confer Condominium status
The Master Deed reserved development rights in the Premises, along with 56 and 70 Center Street, for 7 years following its recordation. Exh. 3. The very act of reserving future development rights in the Premises, by its nature, demonstrates that the Master Deed did not expressly submit that property to Condominium status. Accordingly, Plaintiffs position that “the foreclosure of a subsequently recorded mortgage has no effect on the provisions in the Master Deed which documented the Premises as part of the Condominium” must fail, as the Premises were not incorporated into the Condominium when Sovereign Bank foreclosed on its mortgage. Thus, the Master Deed does not constitute a “primary encumbrance” that “remains controlling.” See Pltff. Mtn. for Summ. Judg. at 6. Rather, the Master Deed simply preserved the option of integrating the Premises into the Condominium in the future, in the manner specified by the Declarant.
Plaintiff is correct that, as the successful bidder at the foreclosure auction, KASL acquired the mortgagee’s rights in the Premises. But the rights conferred by the Master Deed were simply the ability to phase designated “additional land, buildings, and units” into the Condominium, not an existing Condominium status. No action had been taken to convert the Premises to Condominium status before the grant of the mortgage to Sovereign. Thus, the legal status of the Premises turns on whether the subsequent First Amendment to the Master Deed was effective to incorporate the Premises into the Condominium.
B. The First Amendment did not confer Condominium status
The First Amendment was not recorded until after the mortgage had been recorded. See Exh. 4, Exh. 5. It is undisputed that Sovereign never subordinated its interest to the First Amendment. Thus, Sovereign’s *601 prior-recorded mortgage secured it an interest unaffected by the subsequent First Amendment. This is because the Trust could not effectuate an unapproved change in the legal status of property it did not hold title to.
A purported amendment recorded by the mortgagor after Sovereign took legal title (and, incidentally, before the individually-named defendants became Trustees) cannot be effective to undermine the mortgagee’s interest. This is so because, at the instant of foreclosure, the Declarant lost legal title to the land. Sovereign simultaneously took title to property that was not subject to condominium status. Accordingly, the bank’s legal interest was in property that was not part of a condominium. Declarant cannot then subsequently amend the Master Deed, without a subordination agreement from the mortgagee, to convert the Premises — which it no longer owns — into a condominium. Such a result would extinguish Sovereign’s interest in the Premises, and be inequitable.
Further, the First Amendment did not attempt to convert the Premises to condominium status in the manner provided for by the Master Deed. It did not purport to submit the same property designated by the Master Deed — that is, all seven identified lots and the buildings thereon, with the corresponding 59 units— to Condominium status. See Exh. 4. Nor did the First Amendment follow the format contemplated by the Declarant — that is, contemporaneous, single-phase development that affects each individual unit’s percentage ownership as outlined in the Master Deed. See id. There is no provision in the Master Deed that accounts for the change in individual unit owners’ undivided interest in the Condominium if only a portion of the Premises were added. Thus, Plaintiffs position appears inconsistent with the Declarant’s intent as outlined in the Master Deed, and would provide inadequate notice to unit owners of the impact of a future amendment on their investment.
C. The doctrine of estoppel cannot create positive property rights, nor have its elements been met.
Finally, Plaintiff asserts that the Trustees are es-topped from objecting to the inclusion of the Premises in the Condominium by their actions: issuing the §6d certificate, corresponding with Agrawal, and recording the Master Deed and First Amendment. As a threshold matter, the Court notes that it was the Declarant, not the named Trustees, who caused those documents to be recorded. Nevertheless, Plaintiff is unable to satisfy the elements of estoppel, which require “first, a material misrepresentation of a party who had reason to know of its falsity; second, reasonable reliance upon the misrepresentation; and third, some disadvantage to the party seeking to assert estoppel fairly traceable to the misrepresentation.” Harrington v. Fall River Housing Authority, 27 Mass.App.Ct. 301, 308 (1989). As mentioned above, the Trustees did not record the Master Deed or First Amendment. Nor can we say as a matter of law that it was reasonable for Plaintiff to rely on email exchanges with unit owners (who also serve as trustees) rather than the advice of counsel, hiring a title examiner to conduct an independent title search, or speaking with the Declarant’s principal or property manager prior to purchasing at foreclosure. Indeed, it is difficult to imagine how Plaintiff relied on information (principally the §6d certificate, but email correspondence as well) that was not furnished until after it had executed the Memorandum of Foreclosure Sale. See Exh. 6. While these interactions with the Trustees may have contributed to Plaintiffs understanding of what it had already purchased, they do not alter the property’s technical legal status.
Even if the elements of estoppel could be satisfied, however, this doctrine does not create positive property rights. As the Massachusetts Appeals Court has observed, “equitable principles may be used as a shield but not as a sword,” and therefore do not assist a plaintiff in acquiring affirmative property rights. See Davenport v. Broadhurst, 10 Mass.App.Ct. 182, 187-88 (1980).
Plaintiffs Motion for Summaxy Judgment is therefore DENIED.
II. Defendant’s Cross Motion for Summary Judgment[4]
A. Count I Declaratoiy Judgment
Defendant seeks a declaratoiy judgment that the Premises are not part of the Seabreeze Condominium. Because the Trust did not hold title interest to the Premises when it attempted to submit the land and buildings to condominium status, Defendant argues, the First Amendment was ineffective to alter the Premises’ legal status. Rather, the Premises were subject to the mortgage held and eventually foreclosed upon by Sovereign Bank. The Declarant’s later-recorded First Amendment could not work to divest the mortgagee of its interest in the Premises. See 28 Mass. Prac., Foreclosure of Mortgages, 14.9 (4th ed.) (“When a mortgage given before a property has become a condominium is foreclosed, the condominium is terminated, unless the mortgagee has assented to the master deed”).
Furthermore, the plain language of the Master Deed provides for the submission of seven buildings, including 59 units, to condominium status. The Master Deed does not contemplate the impact on each unit’s undivided interest in the Condominium were only a portion of the Additional Land, Buildings, and Units to be added, or were this transition to occur in multiple stages. Rather, it appears that the Declarant intended a “single-phase” submission of the Premises to condominium status, and the Master Deed was constructed to place unit owners on notice accordingly. See G.L.c. 183A, §5(b)(l) (stating that an individual unit owner can consent to new land or units being added to the condominium if the master deed 1) provided for such *602 an addition and 2) “made possible an accurate determination of the alteration of each unit’s undivided interest that would result therefrom”).[5]
For the foregoing reasons, Defendants’ Motion for Summaiy Judgment is ALLOWED as to Count I.
B. Count IV Quiet Title
Defendant next seeks to quiet title to the Premises. It requests a declaration that the Trustees have not created a cloud on the title to the Premises and that the Premises are not part of Seabreeze Condominium. If the Premises are not included in the Condominium, Plaintiff does not have a legal interest (nor the correlative obligations) in the Condominium’s common areas and facilities. Given our determination above that Defendant is entitled to summaiy judgment on Count I, their action to quiet title and request for declaratoiy judgment are also ALLOWED.
C. Count V Intentional Misrepresentation
To recover for intentional misrepresentation, Plaintiff must demonstrate that Defendant knowingly made a false statement of material fact for the purpose of inducing Plaintiff to act thereon, and that Plaintiff reasonably relied upon the representation as true and acted upon it to its detriment. Masingill v. EMC Corp., 449 Mass. 532, 540 (2007). In support of its claim that the Trust intentionally misrepresented the legal status of the Premises, Plaintiff relies upon the First Amendment (recorded by the Declarant) and the §6d Certificate assessing condominium fees due. However, the notice of foreclosure, memorandum of sale, and Foreclosure Deed all expressly identify the property conveyed as “the buildings and land at 54, 58, 60, 64, and 66 Center Street,” with no representation that the Premises were part of Seabreeze Condominiums at the time of the sale. See Exh. 29, Exh. 6, Exh. 35.
Additionally, Plaintiff has not presented evidence that the Declarant’s objective in recording the First Amendment was to induce Plaintiff to eventually purchase the Premises at foreclosure. Indeed, KASL-Seabreeze, LLC was not the purchasing entity; it did not become involved in the transaction until it was assigned the bid from KASL on Februaiy 5, 2009, after the First Amendment had already been recorded. Exh. 12. Thus, Plaintiff will be unable to show that the Declarant recorded the First Amendment for the purpose of inducing reliance by an entity that was unknown to it at the time.
Furthermore, Agrawal’s sworn deposition establishes that he relied on material published by the auction house and communications with Sovereign Bank — not the contents of the First Amendment, §6d Certificate, or any other action by the Trustees — in deciding to purchase the Premises. See Republic Oil Corp. v. Dansinger, 9 Mass.App.Ct. 858, 859 (1980) (admissions by a party at a deposition may provide the basis for summaiy judgment against that party). Agrawal did not speak with the Declarant’s principal or property manager prior to the foreclosure or hire a title examiner to conduct an independent title examination. Exh. 36 at 25, 28. Further, Plaintiff will be unable to establish that the Trustees issued the §6d Certificate to induce Plaintiff to take any action with respect to the Premises. Indeed, to the contrary, the certificate was not issued until one month after Plaintiff had already executed the Memorandum of Purchase and Sale. See Exh. 8, Exh. 6.
As Plaintiff cannot establish the “purpose” or “reliance” elements of its claim for intentional misrepresentation with respect to either the First Amendment or the §6d Certificate, Defendant’s Motion for Summary Judgment is ALLOWED as to Count V.
ORDER
For the foregoing reasons, it is hereby ORDERED that Plaintiffs Motion for Summaiy Judgment on Count I against the Trustees of the Seabreeze Condominium Trust is DENIED. Defendants’ Cross Motion for Summary Judgment is ALLOWED as to Counts I, IV and V.

Though #66 Center Street is included in the language of the deed, it does not appear in Exhibit D to the Master Deed, “Property Description of Additional Land to be Added to Condominium.” Exhibit D further details the Declarant’s reserved development rights, the schedule of percentage interest for each unit, and a schedule of the alternate percentage interest of each unit were the designated Additional Land, Buildings, and Units to be added to the Condominium.

This certificate, issued by the organization of unit owners of a condominium pursuant to G.L.c. 183A, §6(d), sets forth the amount of unpaid common expenses that have been assessed against a unit owner.

While Defendant’s Motion initially sought summaiy judgment as to Count III of Plaintiffs complaint (which asserts that the Trustees have recorded documents that create a cloud on the title to the Premises), counsel for the Trustees notified the Court at oral argument on the cross motions for summaiy judgment on March 20, 2012 that Defendant is not seeking summary judgment on this count.

G.L.c. 183A, §5(b)(l) states: “The percentage of the undivided interest of each unit owner in the common areas and facilities as expressed in the master deed shall not be altered without the consent of all unit owners whose percentage interest of the undivided interest is materially affected, expressed in an amendment to the master deed duly recorded; provided, however, that the acceptance and recording of the unit deed shall constitute consent by the grantee to the addition of subsequent units or land or both to the condominium and consent to the reduction of undivided interest of the unit owner if the master deed at the time of the recording the unit deed provided for the addition of units or land and made possible an accurate determination of the alteration of each unit's undivided interest that would result therefrom.” (Emphasis supplied.)