NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-571

JOHN E. LUNDGREN[1]

vs.

ROBERT HOFFER & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following an industrial accident at his workplace, the plaintiff, John E. Lundgren, contracted Legionnaires' disease; years later, he remains disabled.  This appeal concerns the plaintiff's claims against two lawyers, Robert Hoffer and Robert Berluti, whom he retained to pursue claims against his employer and for workers' compensation.  We consider both the rulings on the motions for summary judgment and the decisions on the motions to reconsider, which we deem timely motions pursuant to

---

[1] The Superior Court docket spelled the plaintiff's name as "John F. Lundgren."  As is our custom, we spell the plaintiff's name as it was spelled in the complaint.

[2] Robert Berluti.

Mass. R. Civ. P. 59 (e), 365 Mass. 827 (1974), for the purpose of this appeal.  We affirm.

Background.  "We summarize the findings set forth in the order on the [defendant's] . . . motion[] for summary judgment, supplemented by other uncontroverted facts in the summary judgment record, and viewing 'the evidence in the light most favorable to the party against whom summary judgment was entered'" -- here, the plaintiff (citations omitted).  Williams v. Board of Appeals of Norwell, 490 Mass. 684, 685 (2022).

The accident occurred on December 1, 2014.  Within a week, the plaintiff was diagnosed with Legionnaires' disease.  He retained Berluti to represent him in potential accident-related claims against his employer.  Berluti took the case on a contingency basis and did not bill the plaintiff for his time.  On June 29, 2015, Berluti terminated his representation of the plaintiff.

The plaintiff maintains that Berluti's representation was deficient in several ways.  According to the plaintiff, during the representation, Berluti failed to (1) meet with him in person; (2) adequately prevent or address spoliation of evidence; (3) take adequate steps to secure water samples; (4) conduct witness interviews; (5) take adequate steps to ensure that the Occupational Safety and Health Administration (OSHA) followed its investigatory protocol or undertook more

2

than a minimal investigation of the accident; (6) timely obtain or act on the conclusions of the National Institute for Occupational Safety and Health (NIOSH) investigation; (7) adequately assess or address the maintenance history of the compressor involved in the incident; and, finally, the plaintiff claims that when Berluti withdrew from representing the plaintiff, he incorrectly told him that no third-party claim could be brought. With one exception,[3] the plaintiff confirmed that he was aware of each of these actions or inactions in 2015 at or before the time Berluti withdrew from representing him.

Berluti referred the plaintiff to Hoffer to pursue a potential workers' compensation claim, and Hoffer and the plaintiff agreed to a contingent fee arrangement. The company and its compensation insurer both denied coverage. Hoffer filed a workers' compensation claim with the Department of Industrial Accidents (DIA) on the plaintiff's behalf. A doctor hired by the insurer opined (to a reasonable degree of medical certainty)

---

[3] The NIOSH report (begun in March 2015 and dated April 2016) concluded that all samples from the plaintiff's workplace were negative for Legionella bacteria and stated that the agency was unable to determine if the workplace incident was related to the plaintiff's case of Legionnaires' disease. The investigation was still underway when Berluti ended his representation in June 2015 and the report was not issued until ten months later, when Berluti had no lawyer-client relationship with the plaintiff. If Berluti failed to acquire or act on the NIOSH report, it is because he had no authority or obligation to do so.

that the plaintiff's disability was not related to Legionnaires' disease and that he did not contract Legionnaires' disease at work.  NIOSH found no evidence that Legionnaires' disease was present at the plaintiff's workplace.

At the request of the DIA judge, a second doctor examined the plaintiff.  This doctor concluded that it was "plausible" or "likely" that the plaintiff's Legionnaires' disease was a product of his workplace exposure but also concluded there was "insufficient evidence that [the plaintiff] is disabled from a respiratory point of view or that [h]is symptoms are due to the effects of Legionella pneumonia."  This second doctor characterized the examination of the plaintiff as "essentially normal," and noted that it would be helpful to review pulmonary function tests and respiratory records (which he did not have) to confirm his impression.  It is unclear whether he ever reviewed them; the record reflects no updated opinion from this doctor.

There is a disagreement between the parties about how Hoffer received the plaintiff's medical records.  For the reasons explained in the discussion of the claim against Hoffer, this disagreement does not preclude our review.

Hoffer began settlement negotiations with the insurer by demanding $125,000 and, eventually, a condition that the insurer accept liability.  The insurer, relying on the first doctor's

4

report, refused to consider a resolution that included an acceptance of liability.

The plaintiff's workers' compensation case was set for trial before the DIA judge in October 2015, but the judge did not reach the case; instead, a different DIA judge mediated the parties' claims in late November, following which the insurer extended a settlement offer of $60,000, with payment of the plaintiff's medical bills incurred to date for treatment of Legionnaires' disease, and no acceptance of responsibility. The plaintiff did not accept the offer and a new trial date was set for December 4, 2015. On that date, the plaintiff signed a settlement agreement on the terms outlined above. In connection with accepting the settlement, he answered questions posed to him by the judge about the settlement, including questions about his understanding of the settlement and his desire to settle his claim. The plaintiff filed his original complaint on December 4, 2018, in the Superior Court.

A judge of the Superior Court allowed the defendants' motions for summary judgment (after a hearing) and denied the plaintiff's motions for reconsideration. Before us are counts I and VI. The remaining claims were dismissed under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).

Discussion. "The allowance of a motion for summary judgment 'is appropriate where there are no genuine issues of

5

material fact in dispute and the moving party is entitled to judgment as a matter of law'" (citation omitted).  Williams, 490 Mass. at 689.

"[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates . . . that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).  We review summary judgment decisions de novo.  Kiribati Seafood Co., LLC v. Dechert LLP, 478 Mass. 111, 116 (2017).

"To prevail on a claim of negligence by an attorney, a client must demonstrate that the attorney failed to exercise reasonable care and skill in handling the matter for which the attorney was retained . . . ; that the client has incurred a loss; and that the attorney's negligence is the proximate cause of the loss." Kiribati Seafood Co., LLC, 478 Mass. at 117, quoting Global NAPs, Inc. v. Awiszus, 457 Mass. 489, 500 (2010). "Expert testimony is generally necessary to establish that the attorney failed to meet the standard of care owed by an attorney in a particular case" (citations omitted).  Pongonis v. Saab, 396 Mass. 1005, 1005 (1985).

The statute of limitations for a legal malpractice claim is three years, see G. L. c. 260, § 4; claims for breach of

6

fiduciary duty likewise are subject to a three-year statute, see G. L. c. 260, § 2A. "The statute of limitations applicable to a legal malpractice claim begins to run when a client 'knows or reasonably should know that he or she has sustained appreciable harm as a result of the lawyer's conduct.'" Lyons v. Nutt, 436 Mass. 244, 247 (2002), quoting Williams v. Ely, 423 Mass. 467, 473 (1996). "[A]ppreciable harm is 'injury, loss or detriment' that is 'capable of being measured or perceived.'" Vinci v. Byers, 65 Mass. App. Ct. 135, 139 (2005), quoting Kennedy v. Goffstein, 62 Mass. App. Ct. 230, 233 (2004). See Parr v. Rosenthal, 475 Mass. 368, 383-384 (2016) ("actual knowledge that an attorney caused a client appreciable harm generally means actual knowledge that the attorney committed legal malpractice"). "The plaintiff need not know the extent of the injury or know that the defendant was negligent for the cause of action to accrue" (citation omitted). Williams, supra at 473.

1. Malpractice and breach of fiduciary duty claims against Berluti. Berluti's representation of the plaintiff ended on June 29, 2015, when Berluti met with the plaintiff and his wife and told them he would no longer represent them. At his deposition, the plaintiff acknowledged that by this date he was aware that Berluti's performance had allegedly been deficient in each of the ways he identified in his lawsuit, detailed above.

7

The plaintiff alleged that these claimed deficiencies began almost immediately at the beginning of the representation, positing that (1) Berluti should have taken immediate action to procure samples, (2) at the time he retained Berluti, "pertinent evidence . . . was in the process of being destroyed," and (3) obtaining information about the maintenance of the malfunctioning equipment was "imperative," and yet Berluti did not do it.  The plaintiff also contends that Berluti instructed him not to pursue getting "critical[,] mandated samples" and that Berluti failed to interview willing witnesses.  Each of these claimed deficiencies by counsel impaired or denied the plaintiff's ability to prove an ephemeral and -- in the plaintiff's view -- necessary element of his job-related injury.  As such, by or before June 29, 2015, the plaintiff was on notice that Berluti had caused him appreciable harm.

We therefore conclude that the complaint, filed more than three years later, was filed after the statute of limitations had run.[4]  See G. L. c. 260, § 4; Lyons, 436 Mass. at 247.  Because it was also subject to a three-year statute of

---

[4] At least one alternative ground exists for allowing the motion for summary judgment in Berluti's favor.  As more fully discussed in relation to the claims against Hoffer, proof of legal malpractice generally requires proof of negligence in the form of an expert opinion, which was not present here.  See Pongonis, 396 Mass. at 1005.

limitations, the claim for breach of fiduciary duty is also time barred.  See G. L. c. 260, § 2A.

2.  Malpractice and breach of fiduciary duty claims against Hoffer.  The plaintiff maintains that Hoffer committed legal malpractice by failing to collect necessary medical records, thus causing the plaintiff to settle the case for less than he might have obtained if represented by competent counsel.

"In a legal malpractice action a plaintiff who alleges his attorney was negligent in the prosecution of a claim will prevail if he proves that he probably would have obtained a better result had the attorney exercised adequate skill and care."  Poly v. Moylan, 423 Mass. 141, 145 (1996), citing Fishman v. Brooks, 396 Mass. 643, 647 (1986).  "[F]ormer clients suffer a loss due to an attorney's negligence only if that negligence is shown to have made a difference to the client."  Poly, supra, quoting Jernigan v. Giard, 398 Mass. 721, 723 (1986).

The "traditional approach" in the trial of a legal malpractice case is, first, that "[t]he original or underlying action is presented to the trier of fact as a trial within a trial."  Fishman, 396 Mass. at 647.  "If the trier of fact concludes that the attorney was negligent, a matter on which expert testimony is usually required, the consequences of that negligence are determined . . ." (citation omitted).  Id.

The first step, then, would be to determine whether Hoffer was negligent.  The plaintiff offered no expert opinion to support his claims and suggests that none was needed because the need to collect medical records in a personal injury case is so obvious that expert testimony is not required.

Even if we assume without deciding that some medical records were missing because of Hoffer's failure to subpoena them, the plaintiff made no showing that he would have obtained a better result (that is, a more favorable settlement) had Hoffer obtained these missing medical records.  The doctors who examined the plaintiff did not opine that his disability resulted from Legionnaires' disease that he contracted at his workplace.  In the absence of evidence that (1) the missing records included such an opinion, likely increasing the amount of the settlement offer, or (2) better lawyering would have resulted in a more favorable settlement offer for a different reason, the plaintiff's claim is unavailing.  See Fishman, 396 Mass. at 647.  Not all attorney negligence is actionable; rather, as Poly makes clear, to support a malpractice claim, a plaintiff must show that "he probably would have obtained a better result had the attorney exercised adequate skill and care."  423 Mass. at 145, citing Fishman, supra at 647.  Because the plaintiff failed to do that, the grant of summary judgment

10

for Hoffer was proper.[5]  Where the same facts supported the plaintiff's claim against Hoffer for breach of fiduciary duty, that judgment was also properly awarded to Hoffer.

3.  The plaintiff's motions for reconsideration.  We "review the judge's denial of a motion for reconsideration only for abuse of discretion."  Merchants Ins. Group v. Spicer, 88 Mass. App. Ct. 262, 271 (2015), citing Commissioner of Rev. v. Comcast Corp., 453 Mass. 293, 312-313 (2009).  Here, we find none.  For the reasons discussed in the consideration of the claims against each defendant, the plaintiff raised no argument in his motions for reconsideration that rendered the summary

---

[5] The plaintiff also claims that the judge could have served as an expert witness.  This argument was not raised below and therefore is not properly before us.  See, e.g., Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).  Even if it were, it would not offer the plaintiff the result he seeks.  Judges are tasked with being impartial arbiters of the law and may not serve as experts in the cases before them.  See S.J.C. Rule 3:09, Canon 3, Rule 3.1(C) (2016) (judges shall not "participate in activities that would appear to a reasonable person to undermine the judge's . . . impartiality").  See also Mass. G. Evid. § 605 (2024) ("The presiding judge may not testify as a witness at the trial").

11

judgment decision unreasonable.  See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).[6]

                                          Judgment affirmed.

                                          Orders dated August 8, 2022,
                                            and August 17, 2022,
                                            denying motions for
                                            reconsideration affirmed.

                                          By the Court (Meade,
                                            Hershfang & Toone, JJ.[7]),

                                          _Paul Little_

                                          Clerk

Entered:  November 21, 2024.

---

[6] "To the extent that we have not specifically addressed other points made . . . in [the appellant's] brief, they 'have not been overlooked.  We find nothing in them that requires discussion.'"  Commonwealth v. Brown, 479 Mass. 163, 168 n.3 (2018), quoting Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[7] The panelists are listed in order of seniority.